UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES RUSH, | Civil Action No.: 18-10612 |
| | Honorable Mark A. Goldsmith |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15, 16]

Plaintiff Charles Rush appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence and thus **RECOMMENDS** that:

- Rush's motion [ECF No. 15] be **DENIED**;

- the Commissioner's motion [ECF No. 16] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I.   **BACKGROUND**

  A.   **Rush's Background and Disability Applications**

Born April 3, 1968, Rush was 47 years old on June 4, 2015, the date of application. [ECF No. 8-5, Tr. 167]. He has no past relevant work. [ECF No. 8-2, Tr. 20]. Rush claimed disability due to degenerative disc disease; herniated discs; numbness, tremors and nerve damage in his extremities; brain hemorrhage with memory loss and difficulty concentrating; high blood pressure with dizziness, nausea and vomiting; headaches with blurred and tunnel vision; and loss of balance and coordination. [ECF No. 8-6, Tr. 194].

After a hearing on December 9, 2016, during which Rush and a vocational expert (VE) testified, the ALJ found that Rush was not disabled. [ECF No. 8-2, Tr. 12-62]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.,* Tr. 1-3]. Rush timely filed for judicial review. [ECF No. 1].

  B.   **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 920(c).

3

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Rush was not disabled. At the first step, she found that Rush had not engaged in substantial gainful activity since the application date. [ECF No. 8-2, Tr. 14]. At the second step, she found that Rush had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, degenerative disc disease of the cervical spine with spondylosis, subarachnoid hemorrhage and hypertension. [*Id.*, Tr. 14]. At the hearing, Rush's attorney acknowledged that he did not have a severe depressive disorder but argued that his physical impairments were significant enough to affect his concentration. [*Id.*, Tr. 14-15]. The ALJ agreed. [*Id.*, Tr. 15]. Next, the ALJ concluded that none of Rush's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 16-17].

Between the third and fourth steps, the ALJ found that Rush had the RFC to perform sedentary work,[2] except:

Never climbing ramps or stairs, stooping, crouching, kneeling,

---

[2] To perform a full range of sedentary work, an individual must be able to lift up to 10 pounds, with occasional lifting or carrying of objects like docket files, ledgers and small tools. Walking and standing are required occasionally, in addition to sitting. 20 C.F.R. § 416.967(a).

4

>and balancing with a hand-held assistive device (cane) needed for ambulation. No constant rotation, flexion or extension of neck. Limited to frequent overhead reaching bilaterally. Work is limited to simple, routine and repetitive tasks, performed in a work environment free from fast-paced production requirements, involving only simple work-related decisions, and with few if any work place changes.

[*Id.*, Tr. 17]. At step four, the ALJ found that Rush did not have past relevant work. [*Id.*, Tr. 20]. At the final step, after considering Rush's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Rush could perform, including positions as an inspector, sorter and assembler, rendering a finding that he was not disabled. [*Id.*].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

5

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Rush argues the ALJ violated the treating physician rule. The Court disagrees and recommends that the ALJ's decision be affirmed.

### A.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.* An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

6

for that weight." *Rogers,* 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

At issue here is an RFC questionnaire signed by Devprakash Samuel, M.D. [3] [ECF No. 8-10, Tr. 505-08]. Dr. Samuel opined that Rush had cervical spondylosis and right L5 lumbar radiculopathy, which caused him pain, numbness, dizziness, fatigue and headaches. [*Id.*]. He said that Rush's prognosis was guarded and that he needed spinal surgery. [*Id.*]. According to Dr. Samuel, Rush was unable to work pending surgery, would be off task 25% of a typical workday because his symptoms would interfere with attention and concentration, and was incapable of even low stress jobs. [*Id.*, Tr. 505-06]. He stated that Rush could walk no city blocks without rest; sit and stand for no more than five minutes at a time; and sit, stand and walk for less than two hours in a workday. [*Id.*, Tr. 506].

Dr. Samuel opined that Rush would need a job that would allow him to shift positions from sitting, walking and standing, and that would allow unscheduled breaks several times an hour. [*Id.*, Tr. 507]. He said that Rush would need a cane for ambulation, and could lift less than ten

---

[3] In her decision, the ALJ transposed Dr. Devprakash Samuel's name; she referred to him as "Dr. Samuel Devprakash." [ECF No. 8-2, Tr. 19-20]. Of further note, the questionnaire was cosigned by Nalini Samuel, M.D., but Dr. Devprakash Samuel appears to have been Rush's primary treating physician.

7

pounds, only rarely. [*Id.*]. Rush could look down and turn his head right or left occasionally, rarely look up, and never hold his head in a static position; could never twist, stoop or climb ladders; and rarely squat. [*Id.*, Tr. 507-08]. Dr. Samuel stated that Rush had significant limitations in reaching, handling or fingering, but did not answer the question pertaining to specific limitations. [*Id.*, Tr. 508]. He concluded that Rush would have good days and bad days, and be absent from work more than four days per month. [*Id.*].

Although the ALJ's assessed RFC is consistent with portions of Dr. Samuel's opinion, she gave little weight to Dr. Samuel's opinion that Rush was unable to work pending spinal surgery "because it is conclusory and addresses an issue reserved exclusively to the Commissioner." [ECF No. 8-2, Tr. 19]. She gave the same weight to Dr. Samuel's opinion regarding Rush's ability to sit, stand and walk, and his opinions that Rush would be off task at least 25% of the workday and could never bend. [*Id.*, Tr. 20. The ALJ reasoned that those opinions were "inconsistent with [Dr. Samuel's] treatment notes, which demonstrate unremarkable physical exams." [*Id.*].

Rush argues that the ALJ's "brief conclusory statement regarding Dr. Samuel's opinion is not enough to be considered a meaningful review."

[ECF No. 15, PageID.584]. He also cites to his abnormal MRI and to portions of Dr. Samuel's treatment notes showing him (Rush) as having pain, difficultly with balance and gait disturbance, and as being homebound. [*Id.*, citing ECF No. 8-8, Tr. 314, ECF No. 8-9, Tr. 429, 431, 441, 449].

Parts of Rush's arguments are without merit as a matter of law. Dr. Samuel's opinions that Rush could not work, and would frequently be absent from work and off task, are not medical opinions to which the ALJ was required to defer. *Brock v. Comm'r of Soc. Sec.,* 368 F. App'x 622, 625 (6th Cir.2010) (issue of whether claimant is disabled is reserved for the Commissioner); *Stojic v. Comm'r of Soc. Sec.*, No. 1:14-CV-1133, 2015 WL 9238986, at *4 (W.D. Mich. Dec. 17, 2015) (doctor's "predictions of how often Plaintiff would likely be off task and miss work were conjecture, not a medical opinion"); *Morgan v. Comm'r of Soc. Sec.*, No. CV 15-12988, 2016 WL 5402940, at *9 (E.D. Mich. July 15, 2016), *adopted,* No. 15-12988, 2016 WL 5369616 (E.D. Mich. Sept. 26, 2016) (prediction that claimant will miss work or be off task not a medical opinion entitled to deference).

With respect to the other portions of Dr. Samuel's opinion, Rush is right that an ALJ is required to articulate good reasons for not giving a treating physician controlling weight so as to permit "meaningful appellate

9

review," and ensure that claimants "understand the disposition of their cases." *Rogers*, 486 F.3d at 242-43 (internal quotation marks and citation omitted). But it is also true that the ALJ's decision must be read as a whole when determining whether she has sufficiently articulated good reasons for discounting the weight given to Dr. Samuel's opinion. *Vitale v. Comm'r of Soc. Sec.*, No. 16-12654, 2017 WL 4296608, at *2 (E.D. Mich. Sept. 28, 2017). The Court finds that the ALJ did sufficiently articulate good reasons for her treatment of Dr. Samuel's opinion.

## B.

The ALJ began with an overall summary of the record:

> [T]he medical evidence of record confirms the claimant's diagnosis with spine disorders and pain management treatment during the period of alleged disability. The claimant was prescribed narcotic, neuropathic, and muscle relaxant medications throughout the period of alleged disability, which supports her allegations of chronic back pain, neck pain, and paresthesia in the extremities (Exhibits 3F/8; 4F/4; 5F/11). The record also confirms the claimant's diagnosis with subarachnoid hemorrhage, accompanied by temporary exacerbations of head pain, dizziness, and numbness in his left extremities.
>
> However, treating sources reported only moderate limitations in the claimant's gait, strength, and coordination. Similarly, no treating source reported significant neurological limitations associated with subarachnoid hemorrhage (e.g., mental deficits, loss of coordination, speech impairment, loss of dexterity, tremor, ataxia). The objective medical evidence of record shows that the claimant's impairments limit his capacity for exertional activity, but not to the exclusion of sedentary work with moderate restrictions in postural and manipulative activity.

[ECF No. 8-2, Tr. 18, citing ECF No. 8-9, Tr. 400, 410, 438].

Addressing Dr. Samuel's records, the ALJ stated that he saw Rush in April 2015, and reported "normal neurological findings, including strength, reflexes, gait, station, sensation, and coordination." [*Id.*, citing ECF No. 8-9, Tr. 431, 439, 443]. The Court notes that the cited records are actually from December 2014, January 2015 and April 2015, and that the last record indicates that Rush required a cane to ambulate and that his posture was stooped. [*Id.*]. Still, the ALJ's assessed RFC includes a cane restriction, [ECF No. 8-2, Tr. 17], and she accurately stated that Dr. Samuel "continued to observe normal gait, strength, coordination, and motor functioning on his physical exams of [Rush] through August 2016." [*Id.*, Tr. 19, citing ECF No. 8-10, Tr. 486-47, 490, 495, 499]. The records cited by the ALJ were from July 2015, October 2015, April 2016, and August 2016. [*Id.*]. Thus, Dr. Samuel's records from December 2014 to August 2016 support the ALJ's finding that the portions of his opinion suggesting that Rush was incapable of limited sedentary work were "inconsistent with [his] treatment notes, which demonstrate unremarkable physical exams." [ECF No. 8-2, Tr. 20].

Rush points out that a December 2014 MRI that Dr. Samuel ordered revealed spinal abnormalities. The reviewing doctor's impression was,

11

"Interval worsening with extrusion at L5-S1, correlate for right S1 radiculopathy. Interval improvement of posterior disc extrusion and L3-L4." [ECF No. 8-8, Tr. 314]. This impression says nothing about Rush's ability to perform limited sedentary work. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (a mere diagnosis "says nothing about the severity of the condition."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) (a mere diagnosis does not establish either the condition's severity or its effect on functional limitations). And although Rush cites records indicating that he suffers from neck and back pain, "under appropriate circumstances a claimant will be denied disability benefits if there is substantial evidence that he can work despite the pain." *Bailey v. Comm'r of Soc. Sec.*, 623 F. Supp. 2d 889, 902–03 (W.D. Mich. 2009). "The factual determination as to whether appellant is able to work despite his pain is within the discretion of the ALJ." *Murphy v. Sec'y of Health & Human Servs.*, 765 F.2d 145 (6th Cir. 1985) (unpublished).

    The ALJ here set forth good reasons for giving little weight to portions of Dr. Samuel's opinion; she reasonably found that those portions of the opinion were inconsistent with his own treatment notes. For that reason, Rush's argument that the ALJ violated the

treating physician rule should be rejected and the ALJ's decision should be affirmed.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Rush's motion [ECF No. 15] be **DENIED**; that the Commissioner's motion [ECF No. 16] be **GRANTED**; and that the ALJ's decision be **AFFIRMED.**

Dated: October 5, 2018

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

13

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 5, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
